602 So.2d 272 (1992)
Cornelius R. THOMPSON, et ux., Appellees,
v.
Gene Herbert JOHNSON, Appellant.
No. 23650-CA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1992.
Smith & Shadoin by Robert E. Shadoin, Ruston, for appellant.
Barham, Adkins & Tatum by Charles C. Barham, Ruston, for appellees.
Before MARVIN, LINDSAY and STEWART, JJ.
LINDSAY, Judge.
The defendant, Gene Herbert Johnson, appealed from a trial court judgment ordering specific performance of a contract, requiring him to purchase a house owned by the plaintiffs, Cornelius and Melba Thompson. For the reasons assigned below, we reverse in part and affirm in part.

FACTS
On July 27, 1990, the parties entered into a contract by which the Thompsons agreed to sell, and Mr. Johnson agreed to buy, a house and lot in Ruston for $51,250. The contract required the sale to be closed on or by September 30, 1990. However, the document further required that, in order to be binding, all of its terms and conditions *273 had to be satisfied. In relevant part, the contract provided:
Seller to furnish certificate of current date from licensed and bonded company showing no visible evidence of present infestation or past unrepaired damage due to termites or other wood destroying insects.
The contract also obligated "[e]ither party hereto who fails to comply with the terms of the agreement, if accepted, ... to pay all fees and costs incurred in enforcing collection and damages."
Mr. Johnson moved into the house on or about August 19, 1990. Thereafter, the Thompsons provided him with a termite certificate from Redd Pest Control of Ruston, Inc., dated August 31, 1990, which stated:
Visible damage due to subterranean termites and rot has been observed in the following areas: in sill and wall across front of house.
The report also stated that the inspector had not found any visible evidence of an active infestation from wood destroying insects and that the structure had previously been treated for termites.
After receiving this report, Mr. Johnson consulted Frank Cordaro, the real estate agent representing the Thompsons, and conveyed reservations about the house's suitability. On September 13, 1990, at Mr. Cordaro's suggestion, he put his misgivings in writing in a letter addressed to Mr. Cordaro. In this letter, he agreed to compensate the Thompsons for rent at the rate of $15 per day (as specified in their contract) for the time he occupied the house and to leave the house in better condition than it was when he moved into it. (He moved out of the house on or about September 25, 1990.)
The Thompsons expressed their willingness to repair the damage and go through with the sale. They then sent the defendant an affidavit dated September 26, 1990, from a building contractor, Butch Pardue. In the document, Mr. Pardue stated that his company had replaced all sills and floor joists along the front of the house with "preservation-treated" timbers. He also stated that all other structural members appeared to be in good condition.
In the meantime, on September 14, 1990, Mr. Johnson entered into a contract with the Ruston Building & Loan Association to purchase another piece of property. An act of sale on this property was executed on September 19, 1990.
On October 4, 1990, the Thompsons filed suit against Mr. Johnson, seeking specific performance of their contract with him. They also sought rent of $585 for the time he occupied the house. Alternatively, they requested damages of $111,766, as well as attorney fees and costs.
Mr. Johnson answered, claiming that the Thompsons had not complied with the termite clause of their contract. He reconvened to seek damages, attorney fees, and court costs.
It was not until November, 1990, that the Thompsons supplied Mr. Johnson with another termite certificate. On November 14, 1990, Terminix Services issued a report which stated that no evidence of active infestation was observed. The report also noted that visible damage due to past infestation appeared to have been repaired.
Trial was held on May 30, 1991. The defendant testified that he intended to buy the plaintiffs' property until he learned of the termite damage. He said that, due to a previous bad experience with a termite-infested house, he was particularly sensitive to the termite problems with the plaintiffs' house. His understanding of the contract was that the termite problem invalidated his obligation to buy the house.
Mrs. Thompson conceded that she and her husband failed to furnish the defendant with a certificate showing no unrepaired termite damage before the contract expired on September 30, 1990. However, she also testified that the defendant never communicated to them his belief that the first termite certificate invalidated their contract. (Mr. Thompson did not testify, the parties stipulating that his testimony would be substantially the same as that of his wife.)
*274 Mr. Cordaro, the real estate broker, testified that he represented the Thompsons when the parties entered into their contract. He also testified that the termite damage was one of several reasons the defendant decided not to purchase the house. The other reasons included such deficiencies as a "soft spot" in the bathroom, problems with the roof, and poor drainage under the house. Although Mr. Cordaro could not be certain, he believed that the defendant decided against buying the plaintiffs' house before he learned that the other property which he eventually purchased was back on the market. He testified that at the time the defendant signed the contract on the other property, the repairs had not been started on the plaintiffs' house.
Although admittedly confused about the dates involved, Amy Goertz, a former employee of Mr. Cordaro's company, testified that she only informed the defendant about the new listing on the other property after he first expressed a desire not to buy the plaintiffs' house due to the termite damage.
The trial court ruled in favor of the plaintiffs and ordered specific performance of the contract to buy within 30 days of the signing of judgment. It found that the intent of parties in such situations was to allow a "grace period" in which to make repairs. It also found that the Thompsons had complied with the termite clause by furnishing Mr. Johnson with Mr. Pardue's statement.
Attorney fees of $2,750 and rent in the amount of $585 were also awarded. The trial court further ordered that the plaintiffs be awarded 5 and ¼ percent interest on the purchase price of the property from October 1, 1990, through October 3, 1990, and legal interest thereon from the date of judicial demand until paid. The court further ordered that the deposit of $1,000 paid by the defendant under the contract and held in escrow by the Louisiana Real Estate Commission be released to the plaintiffs and deducted from the purchase price. Costs were assessed against the defendant.
The defendant appealed suspensively.

LAW
LSA-C.C. Art. 2462 provides, in relevant part:
A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.

. . . . .
A major requirement of one who seeks specific performance is proper performance of his part of the contract. In the absence of proper performance, plaintiffs must prove they are and were ready to comply with whatever obligations devolved upon them to perform. Carmadelle v. Koch-Ellis Marine Contractors, 420 So.2d 1029 (La.App. 5th Cir.1982), writ denied, 427 So.2d 869 (La.1982).
LSA-C.C. Art. 2046 states:
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.
Also relevant are certain portions of LSA-C.C. Art. 1767 and 1773:
Art. 1767. A conditional obligation is one dependent on an uncertain event.
If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive.
. . . . .
Art. 1773. If the condition is that an event shall occur within a fixed time and that time elapses without the occurrence of the event, the condition is considered to have failed.

. . . . .

DISCUSSION
The terms of the contract between the parties obligated the plaintiffs to supply the defendant with a "certificate of current date from licensed and bonded company showing no visible evidence of present infestation or past unrepaired damage due to termites or other wood destroying insects." The initial certificate *275 from Redd Pest Control obviously failed to meet this criteria as it showed that there was visible damage.
Although the plaintiffs subsequently gave the defendant an affidavit executed by their building contractor, there is no evidence demonstrating that his company, Butch Pardue Contractor, Inc., was a "licensed and bonded company," familiar with termites and termite damage, as contemplated by the contract. The plaintiffs did not provide the defendant with the appropriate certificate until November, 1990, more than a month after the expiration of the term set forth in the contract.
The importance of the certificate to the defendant is obvious. Having been made aware of the existence of some past termite damage, the defendant would have had no recourse against either the sellers or the inspector in the event that much more extensive damage was later discovered. Bonhagen v. Hooper, 195 So.2d 447 (La.App. 4th Cir.1967), writ refused, 250 La. 634, 197 So.2d 652 (1967).
Consequently, we find that the trial court clearly erred in granting specific performance of the contract in favor of the plaintiffs. They were not entitled to this remedy because of their own failure to comply with the provisions of the contract. Nor do we find that the Thompsons are entitled to damages. The contract between the Thompsons and Mr. Johnson specifically provided that, in order to be binding, all of its terms and conditions had to be satisfied. Since the clear and unambiguous language of the contract required the Thompsons to supply the buyer with a "clear" termite certificate, and they failed to do so within the allotted time period, the contract was not binding upon the defendant.
Furthermore, we reverse the portion of the judgment awarding attorney fees and costs in favor of the Thompsons.[1] We also find that the defendant is entitled to recover the deposit of $1,000 (which was not earnest money) that he paid under the terms of the contract and which is being held by the Louisiana Real Estate Commission.
However, we find that the trial court was correct in awarding rent to the plaintiffs for the time period the defendant occupied their home. Accordingly, that portion of the judgment is affirmed.

CONCLUSION
The judgment of the trial court is affirmed insofar as it ordered the defendant to pay rent to the plaintiffs. In all other respects, the trial court judgment is reversed. The sum of $1,000 held by the Louisiana Real Estate Commission is to be released to the defendant. Costs are assessed against the plaintiffs.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
NOTES
[1] We decline to award attorney fees in the defendant's favor against the plaintiffs. Although the defendant asked for attorney fees in his reconventional demand, he neither assigned the failure to award attorney fees in his favor as error, nor did he brief the issue as required by URCA Rule 2-12.4. The only mention of this matter in his brief is the request that judgment be rendered in his favor against the plaintiffs "on the Reconventional Demand as requested." As the issue was not briefed, it is considered abandoned.